UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:24-cv-00058 ) |
| NORRIS BROS. EXCAVATING, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Before the Court in this surety case is Atlantic Specialty Insurance Company's ("ASIC") Motion for Preliminary Injunction (Doc. No. 23). The motion has been fully briefed and is ripe for decision. (See Doc. Nos. 24, 28, 29, 30). The Court held an evidentiary hearing on ASIC's motion on July 18, 2025. For the following reasons and those stated on the record during that hearing, ASIC's motion will be granted.

### I.      BACKGROUND

ASIC (the surety) issued millions of dollars in bonds on behalf of Norris Bros. Excavating LLC ("Principal") to "all persons, firms, subcontractors, and corporations" (the obligees) who furnish material or perform labor on three Tennessee construction projects. (Doc. No. 1 ¶ 21; see also Doc. No. 24 at 8–9). The Complaint refers to these construction projects as the "Monroe County Water Line Project," the "City of Lebanon Water Main Project," and the "Olive Branch Projects," which is a single project "to be completed in three phases." (Doc. No. 1 ¶ 21). The purpose of ASIC's surety bonds is to ensure that Principal would pay the obligees what it agreed to pay them on time. (See Doc. No. 24-1). As a condition of issuing these surety bonds, ASIC entered into a General Agreement of Indemnity ("Indemnity Agreement") with Principal, Norris

Bros. Properties, LLC, Jacob Norris, and Justin Norris ("Defendants" or "Indemnitors").[1] (Id. ¶¶ 9–10; Doc. No. 1-1).

The Indemnity Agreement contains several provisions that are particularly relevant to ASIC's motion. First, the Indemnitors agreed to pay or reimburse ASIC, upon demand, for "[a]ll loss, costs and expenses of whatsoever kind and nature" that ASIC "incurred" for "having executed, provided or procured any Bond," or "prosecuting or defending any action or claim in connection with any Bonds." (Doc. No. 1-1 at 2). "The Indemnitors acknowledge that their failure to pay" for any of these losses "will cause irreparable harm for which ASIC has no adequate remedy at law," and that ASIC "is entitled to injunctive relief for specific enforcement" of this payment obligation. (Id.). Second, the Indemnitors also agreed to "protect" ASIC "from loss" in the first place by agreeing to pay ASIC, upon demand, "[a]ny amount sufficient to discharge any claim made against ASIC on any Bond" in "such amount as ASIC, in its sole judgment, shall deem is sufficient[.]"[2] (Id.) Third, if the Indemnitors are unable to "procure the discharge of ASIC from any Bond and all liability by reason thereof," then they "will, if requested by ASIC, either deposit collateral with ASIC, acceptable to ASIC, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to ASIC for the funding of the bonded obligations." (Id. at 5). ASIC summarizes these provisions as requiring Indemnitors to compensate ASIC *after* it sustains any loss, and to fully collateralize ASIC *before* it suffers a loss. (Doc. No. 24 at 2–3).

---

[1] Norris Bros. Properties, LLC was added as an indemnitor to the Indemnity Agreement by a separate Rider. (See Doc. Nos. 1 ¶10; 1-2).

[2] For purposes of this Memorandum Opinion, the Court has replaced the term "Surety" with "ASIC" in the Indemnity Agreement for ease of reference.

ASIC alleges—and the Indemnitors do not dispute—that it has already incurred losses of $636,915.87[3] under the surety bonds it issued on behalf of the Indemnitors. (See Doc. No. 29 at 1). This amount represents the $148,275.48 ASIC paid to satisfy a judgment in Ferguson Enterprises, LLC's lawsuit related to the Olive Branch Projects, (Doc. No. 1-7), and the $488,640.39 of loss ASIC incurred by retaining a replacement contractor after Principal was fired from the City of Lebanon Water Main Project. (See Doc. Nos. 24 at 11–12; 25 at 3). ASIC also alleges that it is at risk of sustaining another $306,155.78 in losses based on various claims against the bonds brought by the City of Lebanon; Hayes Pipe Supply, Inc.; Trinity Utilities & Boring; Smith Excavating LLC; and Spectrum Industrial Services, Inc. (See Doc. Nos. 24 at 9–12; 25 at 4). ASIC further alleges that it spent an additional $32,441.67 hiring "a consultant in order to investigate the completion of the [City of Lebanon Water Main Project] and selection of a new contractor." (Id. ¶¶ 24–26). ASIC also anticipates that the attorney's fees it has or will incur across all of these matters will be $80,000.00. ASIC's counsel stated during the July 18, 2025 evidentiary hearing that it has since collected $128,947.74 related to the Monroe County Water Line Project to offset some of these costs. The total of ASIC's actual losses, risk of exposure, consultant fees, and attorney's fees, minus the amount it has collected, equals $926,565.58.

On May 14, 2024, ASIC sent a letter demanding Indemnitors to deposit $1,350,000.00 "in cash to be held by [ASIC] as security for, and/or to reimburse [ASIC] for any and all loss, cost and expense . . . incurred or to be incurred by [ASIC] in connection with the issuance of" its surety bonds. (Doc. No. 1-8 at 2; see also Doc. No. 1 ¶¶ 37–38). ASIC alleges that despite this demand,

---

[3] It appears the Affidavit of Ashlee Rudnick overstates ASIC's losses by $3.00. Based on the Court's calculations, the total of the $148,275.48 garnishment in the Ferguson case (see Doc. No. 1-7) and the $488,640.39 loss for the replacement contractor for the City of Lebanon project should be $636,915.87, not $636,918.87 as reflected in the Affidavit. (See Doc. No. 25 at 3).

the Indemnitors "have failed and refused to exonerate, reimburse, indemnify, and collateralize ASIC as required by the Indemnity Agreement." (Doc. No. 1 ¶ 39).

As a result, ASIC brought this diversity action against the Indemnitors for breach of the Indemnity Agreement and other contract-based equitable principles. (Id. ¶¶ 41–66). ASIC seeks damages and specific performance of the Indemnitors' duty "to deposit a sum of money as collateral security in an amount deemed necessary by ASIC." (Id. ¶¶ 53–57). ASIC initially requested $1,350,000.00 in collateral, but during the evidentiary hearing it lowered its request to $926,565.58 to better reflect the identified losses and risk exposure described above. (Id. ¶¶ 53–57). As relevant here, ASIC also moved under Federal Rule of Civil Procedure 65 for a preliminary injunction requiring the Indemnitors to provide this collateral to ASIC. (Doc. No. 23 at 1). The Indemnitors oppose any such injunction. (Doc. Nos. 28, 29).

## II. LEGAL STANDARD

"The purpose of a preliminary injunction [under Federal Rule of Civil Procedure 65] is to preserve the status quo until a trial on the merits." S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 848 (6th Cir. 2017) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). "Because they necessarily happen before the parties have had an opportunity to fully develop the record, the movant 'is not required to prove his case in full at a preliminary injunction hearing.'" Id. at 848–49 (citing Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)). A preliminary injunction is an extraordinary and drastic remedy, and should be granted only upon a clear showing that the plaintiff is entitled to such relief. Id. at 849 (citations omitted).

In determining whether to issue a preliminary injunction, the Court considers and balances the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the

injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." Id. (quoting Bays v. City of Fairborn, 668 F.3d 814, 818–19 (6th Cir. 2012)); Langley v. Prudential Mortg. Co., 554 F.3d 647, 648 (6th Cir. 2009).

## III. DISCUSSION

Having carefully considered the parties' filings and arguments, the Court finds that the balance of the four factors above weighs in favor of granting ACIS's request for a preliminary injunction.

### A. Likelihood of Success on the Merits

ASIC argues that it is likely to succeed on the merits of its claim for specific performance because it lacks an adequate remedy at law in relation to Indemnitors' failure to collateralize ASIC. (Doc. Nos. 23 at 3; 24 at 13). The Indemnitors respond that ASIC "has an adequate remedy at law" because "it can recover monetary damages against the Defendants." (Doc. No. 29 at 3–4). The Court agrees with ASIC.

To begin, the Indemnity Agreement unambiguously provides that the Indemnitors "will, if requested by ASIC, either deposit collateral with ASIC, acceptable to ASIC, sufficient to cover all exposure under" the surety "bonds, or make provisions acceptable to ASIC for the funding of the bonded obligations." (Doc. No. 1-1 at 5). The Indemnitors do not dispute this language, and "[c]ourts in Tennessee give the words of an indemnity agreement their natural and ordinary meanings . . . and must give meaning and effect to every provision of the agreement." Selective Ins. Co. of Am. v. KCS Constr., LLC, 2018 WL 2183840, at *2 (M.D. Tenn. May 10, 2018) (citing Long v. McAllister-Long, 221 S.W.3d 1, 11 (Tenn. Ct. App. 2006)) (internal quotation marks omitted). Thus, the natural and ordinary meaning of the Indemnity Agreement is that the Indemnitors must deposit collateral to the satisfaction of ASIC. This Court has upheld similar collateral security provisions in the past. Id. at *3; Great Am. Ins. Co. v. SRS, Inc., 2011 WL

6754072, at *7 (M.D. Tenn. Dec. 23, 2011); see also Westfield Ins. Co. v. Rainey Contracting, LLC, 179 F. Supp. 3d 798, 801 (E.D. Tenn. 2016) (holding that indemnity agreements for surety bonds "are to be specifically enforced").

The remedy for the Indemnitors' breach of the collateral security provision is specific performance, not monetary damages. Indeed, it is well settled that "sureties lack an adequate remedy at law related to the breach of collateral security provisions, rendering the sort of specific performance [ASIC] seeks here as the proper remedy." Westfield Ins. Co. v. Legacy Constr. Servs., LP, 2024 WL 5112758, at *5 n.4 (W.D. Tenn. Dec. 12, 2024) (incorporating by reference more than a "dozen" cases holding same); (Doc. No. 24 at 14–15 n.2 (collecting cases)). It is telling that Indemnitors fail to cite a single case in support of their position that monetary damages would be an adequate remedy at law for ASIC. (See Doc. No. 29 at 4).

The Indemnitors' primary argument on this factor is that ASIC is not likely to succeed on the merits of *all* its claims because it has not, or will not, suffer a loss for many of the bonds that it seeks indemnification for. (Doc. No. 29 at 3–4). The Indemnitors concede that ASIC already suffered $636,915.87 in actual losses, (see Doc. No. 29 at 1), and ASIC has made a persuasive showing that it is at risk of incurring an additional $306,155.78 in losses based on various claims against the bonds, $32,441.67 in consulting fees, and $80,000.00 in attorney's fees. (See Doc. Nos. 24 at 9–12; 25 at 4). Although it is uncertain whether these *anticipated* costs will materialize into *actual* costs at a later date, the Court finds it likely that ASIC will be able to prove that the Indemnitors have a contractual duty to collateralize ASIC for this amount.

Accordingly, the Court finds that this factor weighs in favor of granting a preliminary injunction.

6
Case 2:24-cv-00058   Document 41   Filed 07/22/25   Page 6 of 9 PageID #: 272

B. <u>Irreparable Harm</u>

The Court also finds that ASIC will suffer irreparable harm absent injunctive relief. This Court and other federal courts in Tennessee "have routinely found that sureties suffer immediate, irreparable harm if they are denied receipt of collateral after liability has been asserted against them." <u>Selective Ins.</u>, 2018 WL 2183840, at *4 (collecting cases); <u>Rainey</u>, 179 F. Supp. 3d at 801 (collecting cases). Indemnity agreements, like the one in this case, recognize the potential for irreparable harm by providing the surety:

> (1) insurance that it is fully collateralized before it sustains additional losses; (2) protection from any loss that might result from Indemnitors' insolvency and/or dissipation of assets; (3) motivation that the Indemnitors will promptly resolve outstanding claims; and (4) creation of a fund from which [the surety] may resolve liability that has been or may be asserted against it relative to the [bonds].

<u>SRS, Inc.</u>, 2011 WL 6754072, at *9; <u>see also</u> <u>Selective Ins.</u>, 2018 WL 2183840, at *4. Sureties suffer immediate, irreparable harm when they do not receive the benefit of their bargain for collateralization, particularly where, like here, the Indemnitors "agreed to collateralize [the surety] against anticipated liability on the front-end *in addition to* reimbursement for actual losses on the back-end." <u>Rainey</u>, 179 F. Supp. 3d 798 (emphases added).

The Indemnitors argue that ASIC's delay in moving for a preliminary injunction implies that it will not suffer irreparable harm "because the alleged injurious conduct occurred over a year ago. (Doc. No. 29 at 5–6). This argument is unpersuasive because much of that delay, if any, was due to the parties' ongoing, good faith efforts to engage in settlement discussions. (<u>See</u> Doc. No. 30 at 4–5). Under these circumstances, the Court will not fault ASIC's decision to engage in these seemingly productive discussions before rushing to the courthouse doors.

Therefore, the Court finds that ASIC would suffer irreparable harm without the injunction.

C. <u>Balance of Equities</u>

The Indemnitors argue that the balance of equities tips in their favor because requiring them to "collateralize such a large sum" would cause substantial harm to their ability to "utilize capital to run their businesses, complete projects that they are currently under contract for, [and] jeopardizes" their "small Tennessee family business." (Doc. No. 29 (citing Doc. No. 27)). This Court has rejected identical arguments in the past, especially where, like here, the Indemnitors "cite to no *legal* authority that financial hardship is a defense or that it should tip the equities in [their] favor." <u>SRS, Inc.</u>, 2011 WL 6754072, at *9 (emphasis added) (collecting cases). The Indemnitors "already received [their] benefit of the bargain by receiving, at low cost and without furnishing collateral, multi-million dollar bonds from [ASIC] that enabled [them] to receive contracts" for the Monroe County Water Line Project, the City of Lebanon Water Main Project, and the Olive Branch Projects. See <u>id.</u> at *10. ASIC just wants its "end of the bargain—*i.e.*, enforcement of [the Indemnitors'] promise to secure [ASIC] against any losses asserted because of [their] underlying failure to perform on a bonded contract." <u>Id.</u> For these reasons, this Court joins the long list of district court cases holding "that enforcing the surety's right to collateral satisfies the equities balance test, even where it may cause financial hardship to the indemnitor." <u>Rainey</u>, 179 F. Supp. 3d at 802–03 (collecting cases); <u>but see</u> <u>Selective Ins.</u>, 2018 WL 2183840, at *4 (finding that "this factor is neutral" because the surety has a vested interest in the Principal finishing the construction projects and would not want the Principal to go bankrupt).

D. <u>Public Interest</u>

Last, the public interest supports granting a preliminary injunction. The Indemnitors argue in their response brief that a preliminary injunction would not further the public interest because it would cause them "to have to remit payment in an amount greater than the actual loss sustained at present and greater than the purported potential claims at this point." (Doc. No. 29 at 7). This

8

Case 2:24-cv-00058   Document 41   Filed 07/22/25   Page 8 of 9 PageID #: 274

uncertainty is less problematic now that ASIC lowered its request from $1,350,000.00 to $926,565.58. But even so, courts in "the Middle District of Tennessee have acknowledged that public policy favors the solvency of surety companies so that they may provide the necessary bonds for public works projects." Rainey, 179 F. Supp. 3d at 801 (citing SRS, Inc., 2011 WL 6754072, at *10); Selective Ins., 2018 WL 2183840, at *4. The Court agrees with this reasoning and finds that the public interest weighs in favor of a preliminary injunction.

## IV.  CONCLUSION

For the foregoing reasons, ASIC's Motion for Preliminary Injunction (Doc. No. 23) will be granted. Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Court recognizes the irony in requiring ASIC to post a bond to receive collateral for a bond, but a security bond of one percent of ASIC's requested amount ($9,265.00) seems reasonable and appropriate here.

The Court will enter an appropriate Order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE